IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.B., a minor, by and through his parent and natural guardian, Ms. J.B., | ) ) ) | CIVIL ACTION |
| **Plaintiffs**, | ) ) | No. 2:21-cv-690 |
| v. | ) ) | |
| GREATER LATROBE SCHOOL DISTRICT, | ) ) | |
| **Defendant**. | ) ) ) ) | **Jury Trial Demanded** |

# COMPLAINT

AND NOW come the Plaintiffs, J.B., a minor, by and through his parent and natural guardian, Ms. J.B., by and through their counsel, Kristen C. Weidus, Esquire and Ruder Law LLC, alleging the following upon information and belief (except for those allegations pertaining to Plaintiffs, which are based on personal knowledge), after due investigation by undersigned counsel:

## Preliminary Statement

1. This is a civil action brought by J.B., a minor child, by and through his mother and natural guardian, Ms. J.B.

2. J.B. was an 8th grade student in Defendant's Junior High School during the 2019-2020 school year.

1

3. J.B. was on the wrestling team during his 8th grade year, and he observed incidents of severe hazing.

4. Plaintiffs allege that Defendant was aware that junior high school students were regularly unsupervised.

5. Plaintiffs allege Defendant was aware of inappropriate behavior between students and coaches on the wrestling team.

6. Plaintiffs allege Defendant violated their rights under the United States Constitution under the Due Process Clause of the Fourteenth Amendment which provides that a state shall not "deprive any person of life, liberty, or property without due process of law."

7. Plaintiffs allege Defendant is liable pursuant to 42 U.S.C. § 1983 under the "state created danger theory."

8. Plaintiffs allege Defendant violated § 1983, as amended, by violating Plaintiffs' fundamental liberty interest, and they seek equitable, compensatory, and punitive damages to remedy the Defendant's violations of the United States Constitution, and 42 U.S.C. Section 1983.

9. Plaintiffs allege that Defendant's actions and inactions constitute a violation of 18 Pa.C.S.A. § 2802, which regards antihazing.

10. Plaintiffs allege Defendant's actions and inactions which violated 18 Pa.C.S.A. § 2802 constitute a violation of Negligence Per Se.

11. Plaintiffs allege Defendant had a duty to care for minor child J.B., and its actions and inactions resulted in negligence. Defendant's actions and inactions resulted in harm to J.B., as he has been diagnosed with Post Traumatic Stress Disorder as a result of his direct observations of the hazing between fellow peers and District personnel.

12. Plaintiffs allege that Defendant's actions and inactions caused J.B. an intentional infliction of emotional distress.

## Jurisdiction and Standing

13. This Complaint seeks appropriate relief for violations pursuant to a civil action under, *inter alia*, 42 U.S.C. §§ 1983 seeking damages against Defendant for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States, and for refusing or neglecting to prevent such deprivations and denials to Plaintiffs.

14. This case arises under the United States Constitution and 42 U.S.C. §§ 1983 and 1988, as amended. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this action arises under the laws of the United States.

15. This action arises under the laws of the United States, and therefore this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

16. Further, this action seeks recovery of attorneys' fees and costs pursuant to §§ 1983 and 1988.

17. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2). The actions complained of took place in this judicial district, evidence and pertinent records relevant to the allegations would be maintained in this judicial district, and the Defendant is present and/or conducts affairs in this judicial district.

18. The Court has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over claims brought pursuant to Pennsylvania state law because such claims arise from the same set of operative facts as those claims brought pursuant to the claims arising under the United States Constitution and 42 U.S.C. §§ 1983 and 1988. The facts underlying all claims herein raised are so related that they create the same case and controversy.

## Parties

19. Plaintiff J.B., a minor child, resides with his mother, Ms. J.B., in the Greater Latrobe School District.

20. Plaintiff Ms. J.B., is J.B.'s mother and natural guardian.

21. Defendant, the Greater Latrobe School District, (hereinafter "District") is an educational institution with multiple locations, including a Central Administration office located at 1816 Lincoln Avenue, Latrobe, PA 15650.

22. At all relevant times pertaining to the instant matter, plaintiff J.B. was a student in the Greater Latrobe School District.

## Relevant Facts

23. J.B., a minor child, was an 8th grade student in Defendant's junior high school during the 2019-2020 school year.

24. J.B. was identified in 2010 as a student with a disability with a speech or language impairment.

25. J.B.'s natural father passed away in 2013.

26. The minor child had a history of minor anxiety issues that were well maintained.

27. J.B. did well academically in junior high school, and he did not have any disciplinary incidents.

28. J.B. was on the wrestling team during the 2019-2020 school year.

29. It was well known by school administration, teachers, staff, and coaches that while minor children were in Defendant's care and supervision for school sponsored activities, these minor children were often left without supervision.

30. Defendant was aware of hazing concerns and other inappropriate behavior between students and between school district coaches and students.

31. J.B. witnessed the well-known incidents in January 2020 when two Greater Latrobe Junior High School wrestling coaches and four students faced criminal charges for a hazing incident that was caught on camera.

32. J.B. was questioned by school district personnel and the police.

33. He was required to give a full statement to a police officer about what he observed.

34. J.B.'s mother was not present during the school's questioning of her son, and she was not consulted about the witness statement obtained by the school and turned over to the police.

35. J.B. felt mislead by school personnel and the police, as he was under the impression that numerous wrestling team members gave statements. The Plaintiffs later learned J.B. was the only student who provided statements against players and school personnel on the date in question.

36. To protect her son, J.B.'s mother asked for her son's statement to be retracted, but the police refused.

37. J.B.'s observations of the aggressive hazing and his involvement with school and police questioning increased his stress and anxiety.

38. When the wrestling season was canceled in January 2020, the football coaches reached out to displaced wrestlers and offered them an opportunity to workout with the football team. The student football team members' response was to send death threats to J.B. and other teammates.

39. Some students physically assaulted the displaced wrestlers for victimizing the students who were allegedly hazed.

40. Many students began bullying and taunting displaced wrestlers, including J.B., by trying to take lunches, and filling shoes with water and throwing the shoes at other students.

41. On one occasion, a water-filled shoe hit a student in the face, causing his nose to bleed.

42. The students were again unsupervised at the time of these incidents.

43. A coach entered the room, saw the bloody nose, but said and did nothing to the offending student.

44. After that incident, J.B. came home crying and told his mother he was never returning to school.

45. J.B. lives in fear that the wrestlers involved in the alleged hazing and/or their family will retaliate against him.

46. J.B. had not been in therapy for several years, but he asked to re-enter treatment to address his symptoms following the incidents of hazing.

47. J.B. was recently diagnosed by his family doctor with Post Traumatic Stress Disorder; the traumatic event being his experience on the wrestling team and the events before, during, and after the team's hazing of younger members.

48. J.B.'s mother pulled him from in-person learning during the 2019-2020 school year, as J.B. was terrified to return to the District.

49. Despite attempts to secure appropriate assistance from the District for J.B., Ms. J.B. was ultimately forced to enroll her son in a neighboring public school district for the 2020-2021 school year.

50. J.B. is thriving in the neighboring public school district, but Ms. J.B. is being forced to pay tuition each year to enable him to attend.

### Count I
### Fourteenth Amendment State Related Danger

51. The averments set forth in each of the preceding paragraphs are incorporated by reference here as though fully set forth at length.

52. To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

53. The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1.

54. Plaintiffs argue that the District violated J.B.'s Fourteenth Amendment rights, and this violation is actionable pursuant to Section 1983 under the "state-created danger" theory.

55. To establish a state-created danger claim, plaintiffs must establish four elements:

    (1) The harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff or with a degree of culpability that shocks the conscience; (3) there existed some relationship between the state and the plaintiff such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) that the state actors affirmatively used their authority to create a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Enright v. Springfield Sch. Dist.,* 2007 WL 4570970 at *8 (E.D. Pa. 2007).

56. Further, "a constitutional violation may result when 'state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention." *Id*. (citing *Burella v. City of Phila.*, 501 F.3d 134, 146-47 (3d Cir. 2007)).

57. The District knew or should have known that peer-on-peer hazing was occurring in its facilities and during District-sponsored sports and activities.

58. The District knew or should have known that District wrestling coaches were engaging in inappropriate hazing towards its students, and they were failing to protect students from hazing by other peers.

59. The District knew or should have known of J.B.'s vulnerability given his age, familial circumstances, and identified disability, when he and other students were left unsupervised.

60. The District, based on this knowledge, should have ensured all middle school students were properly supervised by staff who would keep them safe.

61. The District, knowing that its own staff were engaging in inappropriate behavior, should have anticipated that J.B. would have been traumatized when he had to witness hazing and that he would be further traumatized by intense school questioning after the District decided to investigate hazing concerns.

62. The District, based on this knowledge, should have consulted with J.B.'s mother before coercing J.B. to give a statement to turn over to the local police.

63. The District, based on this knowledge, should also have anticipated that J.B.'s involvement in the District's investigation would be traumatizing to J.B.

64. Furthermore, the District should have been aware that J.B.'s statements and involvement in the investigation would have subjected him to bullying and threats by his peers.

65. Despite this knowledge, the District failed to ensure J.B.'s safety while engaging in District-sponsored activities and while participating in his normal school day.

66. The harm ultimately caused to J.B. was foreseeable and fairly direct.

67. The District acted in willful disregard for J.B.'s safety.

68. There was a specific relationship between J.B. and the District, in that J.B. was a student with a disability in its care and protection as required by law.

69. The District used its authority to create the opportunity for harm that otherwise would not have existed by failing to supervise its students, by failing to hire and maintain wrestling coaches who would act appropriately and in the best interest of its students, and by subsequently failing to ensure J.B.'s safety after the District conducted its hazing investigation.

70. The District's actions were predicated on a failure to act in light of a known risk.

71. The District's actions manifested a disregard of a high and excessive degree of danger, known to it or apparent to a reasonable person in its position.

72. The actions of the District were outrageous and willful or undertaken in such a negligent manner as to rise to the level of outrageousness and willfulness.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court award Plaintiffs all remedies available under the United States Constitution for these violations, including monetary damages, attorneys' fees and costs, and all other relief this Honorable Court deems appropriate.

### Count II
### Violation of Fourteenth Amendment Liberty Interest

73. The averments set forth in each of the preceding paragraphs are incorporated by reference here as though fully set forth at length.

74. "To state a due process claim under § 1983, a plaintiff 'must identify a 'recognized liberty or property interest within the purview of the Fourteenth Amendment and show that they were intentionally or recklessly deprived of that interest, even temporarily, under state law.'" *Anspach ex rel. Anspach v. Cty. of Phila., Dept. of Publ. Health,* 503 F.3d 256, 262 (3d Cir. 2007) (quoting *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990)).

75. "The interest of parents in the care, custody, and control of their children–is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).

76. The Court has also recognized a "cognizable liberty interest in preserving the life and physical safety of [a minor child] ... a right that logically extends from [a parent's] recognized liberty interest in the custody of his children and the maintenance and integrity of the family." *Est. of Bailey by Oare v. York Cty.*, 768 F.2d 503 (3d Cir. 1985), *abrogated by DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989).

77. Ms. J.B. possessed a liberty interest, guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in the parenthood and companionship of her child,

J.B., and the maintenance and integrity of their family.

78. The actions of the District in failing to adequately support J.B. resulted in him being victimized by school District staff and other students, and it was the proximate cause of the loss and diminution of these rights.

79. Ms. J.B. also possessed a liberty interest, guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, to make parental decisions in the best interest of her child.

80. The District's intense questioning of J.B during its investigation of the hazing incidents without contacting or consulting Ms. J.B. violated her rights as a parent to protect her son.

81. Ms. J.B. suffered damage, trauma, and distress, as more specifically described herein, which were proximately caused by the conduct of the District.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court award Plaintiffs all remedies available under Section 1983 for these violations, including monetary damages, attorneys' fees and costs, and all other relief this Honorable Court deems appropriate.

## Count III
## Negligence Per Se

82. The averments set forth in each of the preceding paragraphs are incorporated by reference here as though fully set forth at length.

83. At all relevant times, Plaintiff J.B., as an enrolled student at Defendant Greater Latrobe School District, was under the care, custody, and control of Defendant during the school day.

84. "As of November 18, 2018, Pennsylvania law states (in pertinent part) that a person commits the offense of hazing if that person: [I]ntentionally, knowingly, or recklessly, for the purpose of initiating, admitting or affiliating a minor or student into or with an organization, or for the purpose of continuing or enhancing a minor or student's membership or status in an organization,

causes, coerces or forces a minor or student to do any of the following ... Endure brutality of a physical nature ... Endure brutality of a mental nature ... [or] [e]ndure brutality of a sexual nature..." *Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 3d 393 (M.D. Pa. 2020); 18 Pa. C.S. § 2802.

85. The Piazza Antihazing Law also allows for findings that an organization or institution has violated the law if it "intentionally, knowingly, or recklessly promotes or facilitates a violation of section 2802." Id.; 18 Pa. C.S. § 2804; 2805.

86. Students and Greater Latrobe School District Coaches committed acts of hazing by intentionally, knowingly, and recklessly forcing younger wrestling students to endure brutality of a physical and emotional nature.

87. Defendant was aware that students were often left unsupervised.

88. Defendant knowingly ignored the warnings about students and District-hired coaches engaging in hazing.

89. Defendant recklessly ignored the warning signs about hazing occurring on its property.

90. "The concept of negligence *per se* establishes both duty and the required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm [.]" *Braxton v. Commonwealth Dept. of Transp.,* 634 A.2d 1150, 1157 (1993). *See Lutheran Distributors v. Weilersbacher,* 650 A.2d 83, 91 (1994) (where a statute imposes a duty, the violation of such statute is negligence *per se* ); *Commonwealth Dept. of Pub. Welfare v. Hickey,* 582 A.2d 734, 736 (1990) (same). A plaintiff, however, having proven negligence *per se,* cannot recover unless it can be proven that such negligence was the proximate cause of the injury. *Hickey, supra. See Wagner v. Anzon, Inc.,* 684 A.2d 570, 574 (1996).

91. Defendant has a duty to protect its students.

92. Defendant violated Pennsylvania's anti-hazing statute.

93. Plaintiffs were harmed as a direct result of Defendant's negligence, carelessness, and recklessness. Due to Defendant's actions and nonactions, Plaintiffs have suffered damages including but not limited to emotional anguish, reputational harm, embarrassment, inconvenience, mental anguish, physical manifestations of emotional duress, emotional and psychological trauma, and financial loss.

94. More specifically, the minor J.B. now lives in fear. He is terrified of retaliation by other students in school. Furthermore, J.B. was recently diagnosed with Post Traumatic Stress Disorder, and he requires ongoing treatment.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court award Plaintiffs all remedies available under applicable law for these violations, including monetary damages, attorneys' fees and costs, and all other relief this Honorable Court deems appropriate.

## Count IV
## Negligence

95. The averments set forth in each of the preceding paragraphs are incorporated by reference here as though fully set forth at length.

96. At all relevant times, Plaintiff J.B., as an enrolled student at Defendant Greater Latrobe School District, was under the care, custody, and control of Defendant during the school day.

97. The four elements of a negligence claim under Pennsylvania law are as follows: "a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff." *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348 (Pa. 2018).

98. The District owed a duty to Plaintiffs through a preexisting duty of care. The District, as a public school district, has a special relationship to ensure all students, including J.B., are safe and have their emotional and physical well-being protected while on school premises and while participating in school activities.

99. The District breached its duties to Plaintiffs through its negligence, carelessness, and recklessness, generally and in the following particulars:

    a. The District knowingly left minors unsupervised.

    b. The District carelessly and recklessly left minors in the care of District Coaches who were known to be acting inappropriately by engaging in hazing and not stopping or reporting hazing that was occurring between students.

    c. The District failed to protect its students, including J.B., from hazing.

    d. The District subjected Plaintiff J.B. to intense questioning without parental consent, awareness, or consultation.

    e. The District failed to protect J.B. from threats and bullying after the hazing investigation concluded.

100. As a result of the District's actions and inactions, Plaintiffs have suffered damages including but not limited to emotional anguish, reputational harm, embarrassment, inconvenience, mental anguish, physical manifestations of emotional duress, emotional and psychological trauma, and financial loss.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court award Plaintiffs all remedies available under applicable law for these violations, including monetary damages, attorneys' fees and costs, and all other relief this Honorable Court deems appropriate.

## Count V
## Intentional Infliction of Emotional Distress

101. The averments set forth in each of the preceding paragraphs are incorporated by reference here as though fully set forth at length.

102. Under Pennsylvania tort law, a plaintiff alleging intentional infliction of emotional distress ("IIED") must show the following: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. *Hoy v. Angelone*, 691 A.2d 476 (Pa. Super. Ct. 1997).

103. The Plaintiff must show that the conduct at issue was "so outrageous in character and so extreme in degree as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.*

104. Finally, Plaintiff must show that he suffered "some type of resulting physical harm due to the defendant's outrageous conduct." *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010).

105. Ms. J.B. entrusted the care of her minor child, J.B. to the District during the school day and during school sponsored activities, like wrestling.

106. Rather than acting to care for J.B.'s well-being, the District recklessly ignored J.B.'s physical safety and emotional well-being and allowed J.B. to:

   a. Witness physical brutality involving peers and the District's coaches;

   b. Be coerced into giving official statements without parental support and consultation; and

   c. Be taunted and bullied by other peers after the hazing incident was made public.

107. The District failed to act in any way to provide even the most basic care and support for J.B. in the school setting before, during, and after the hazing incidents.

108. This conduct by the District was extreme and outrageous, as the District had a duty to act in place of a Parent while J.B. was in its care, custody, and control.

109. The District acted intentionally and recklessly in failing to provide appropriate action and support to ensure J.B. had what he needed to be physically safe and emotionally supported while in the District's care.

110. Additionally, the District acted intentionally and recklessly in failing to notify J.B.'s mother when it decided to subject J.B. to intense school questioning and required J.B. to provide a signed police statement.

111. Furthermore, the District was aware of J.B.'s personal history, his disability, and his involvement in helplessly observing brutal hazing, and yet they did nothing to ensure J.B. had what he needed to be physically and emotionally secure.

112. To the extent that this outrageous conduct was perpetrated by the District, they adopted and ratified this conduct with a wanton and reckless disregard to the adverse consequences to J.B.

113. As a result of the District's actions and inactions, J.B. suffered extreme emotional distress and psychological anxiety. J.B. continues to suffer from emotional distress and requires ongoing mental health treatment for Post Traumatic Stress Disorder.

114. J.B. lives in constant fear of retaliation after being coerced to give a statement to police, relentless guilt over not personally stopping the hazing of other students, and numerous post-traumatic stress disorder symptoms from what he observed and experienced before, during, and after the hazing.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court award Plaintiffs all remedies available under applicable law for these violations, including monetary damages, attorneys' fees and costs, and all other relief this Honorable Court deems appropriate.

Plaintiffs respectfully request that this Court grant the following relief:

a) Declare that Defendant violated Plaintiffs' rights under the United States Constitution;

b) Award Plaintiff all remedies available under the United States Constitution and Section 1983 for these violations, including monetary damages, attorneys' fees and costs, and all other relief this Honorable Court deems appropriate;

c) Declare that the Defendant is civilly liable for being negligent, for its negligence per se in violating Pennsylvania's anti-hazing statute, and that Defendant intentionally inflicted emotional distress on the minor child, J.B.;

d) Compel Defendant to reimburse Ms. J.B. all tuition and related fees she has expended to send her minor child, J.B., to a neighboring public school district to ensure his safety and security;

e) Compel Defendant to continue paying the costs of tuition and related fees until the minor child in question graduates from high school;

f) Award reasonable attorney fees; and

g) Enact any other remedies required by the interests of justice.

Respectfully Submitted,

*/s/ Kristen Weidus*
Kristen C. Weidus, Esq.
Attorney I.D. No.: 313486
Ruder Law
One Oxford Center
301 Grant Street, Suite 270
Pittsburgh, PA 15219
Phone: (412) 281-4959
Fax: (412) 291-1389
Email: kristenweidus@ruderlaw.com