THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.B., a minor, by and through his parent and natural guardian, Ms. J.B., Ms. J.B., in her own right,<br><br>    Plaintiffs,<br><br> vs.<br><br>GREATER LATROBE SCHOOL DISTRICT,<br><br>    Defendant. | )<br>)<br>)<br>) 2:21-cv-00690-RJC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

  Before the Court is the Motion to Dismiss (ECF No. 13) filed by Defendant Greater Latrobe School District (the "District"). In this action, Plaintiffs, J.B., a minor, by and through his parent and natural guardian, Ms. J.B., and Ms. J.B., in her own right, ("Plaintiffs") assert claims against the District arising out of J.B.'s observation of hazing incidents while a student athlete on the District's junior varsity wrestling team and his subsequent questioning regarding these incidents by District personnel and police. The District moves to dismiss each of the five claims set forth against it in Plaintiffs' operative Amended Complaint ("Complaint") pursuant to Rule 12(b)(6). Mot. ¶ 2, ECF No. 13. Alternatively, the District requests dismissal of any request for punitive damages in the Complaint and any request for attorney's fees as part of Counts III, IV, and V. *Id.*

1

at ¶ 5.  The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  The Motion has been fully briefed and is ripe for disposition.

    I.      **Factual Background & Procedural History**

In the Complaint, Plaintiffs set forth the following factual allegations relevant to the Court's consideration of the Motion at issue:

J.B. was identified in 2010 as a student with a disability with a speech or language impairment.  Compl. ¶ 24, ECF No. 12.  J.B.'s natural father passed away in 2013.  *Id.* at ¶ 25.  The District was aware of both of these facts.  *Id.* at ¶ 64.  J.B. was an 8th grade student in the District's junior high school during the 2019-2020 school year, and was also a student athlete on the District's wrestling team.  *Id.* at ¶¶ 2-3.  During his time on the wrestling team, J.B. observed incidents of severe hazing.  *Id.* at ¶ 3.

The District was aware that junior high school students, and presumably those on the wrestling team, were regularly left unsupervised, and was further aware of inappropriate behavior, and specifically hazing concerns, between students and coaches on the wrestling team.  Compl. ¶¶ 4-5; 30-31, ECF No. 12.  "J.B. witnessed the well-known incidents in January 2020 when two Greater Latrobe Junior High School wrestling coaches and four students faced criminal charges for a hazing incident that was caught on camera."  *Id.* at ¶ 32.  More specifically, members of the District's wrestling team used a wooden stick, which those members referred to as a "rape stick," to assault other team members before practices at the school in January 2020.  *Id.* at ¶ 33.  "Over the course of at least one week, older wrestling team members physically restrained younger teammates, using the wooden stick to poke other teammates in the buttocks."  *Id*.  Video from the District's surveillance cameras shows coaches witnessing such abuse, and on one occasion confiscating the wooden stick.  *Id.* at ¶ 34.  The confiscating coach did not dispose of the wooden

stick at that time, as it appears in surveillance video and was later confiscated again by the same coach several days later. *Id*.

On a separate occasion, the District's other wrestling coach witnessed members of the wrestling team utilizing a volleyball net to tie up a teammate, and further assaulting him with the wooden stick while that teammate was immobilized. Compl. ¶ 35, ECF No. 12. Surveillance video shows that Defendant's wrestling coach chose not to intervene. *Id*. In August 2021, several wrestlers testified at a public hearing that the District's coaches were made aware of the sexual assaults, but that the coaches failed to intervene, simply characterizing the behavior as "weird." *Id.* at ¶ 36.

J.B. was questioned by the District's personnel and the police regarding the above-described incidents, and was required to give a full statement to a police officer about his observations. Compl. ¶¶ 37-38, ECF No. 12. J.B.'s mother was not present during the school's questioning of her son, and she was not consulted about the witness statement obtained by the school and subsequently provided to the police. *Id.* at ¶ 39. While J.B. was under the impression that numerous wrestling team members had provided statements regarding the incidents, Plaintiffs later discovered that J.B. was the only student who provided statements against players and District personnel on the date in question. *Id.* at ¶ 40. Ms. J.B. asked for J.B.'s statement to be retracted, but the police refused. *Id.* at ¶ 41. The District failed to maintain the confidentiality of students, such as J.B., who cooperated in the investigation of the hazing incidents, which in turn made J.B. vulnerable to bullying and harassment by the offending wrestlers. *Id.* at ¶ 71. The District subsequently failed to ensure J.B.'s safety while he engaged in District-sponsored activities and participated in his normal school day. *Id.* at ¶ 72.

The wrestling season was canceled in January of 2020, and, following this cancelation, the District's football coaches contacted members of the wrestling team to provide them with an opportunity to work out with the football team. Compl. ¶ 43, ECF No. 12. The football student team members subsequently sent death threats to J.B. and other wrestling team members, and further physically assaulted certain displaced wrestlers in retaliation for the above-described hazing incidents. *Id.* at ¶¶ 43-44. Many students bullied and taunted the displaced wrestlers, including J.B., by attempting to take lunches and filling shoes with water and throwing the shoes at other students. *Id.* at ¶ 45. The students were unsupervised at the time of these incidents. *Id.* at ¶ 47. On one occasion, a student was hit in the face by a water-filled shoe, causing the student's nose to bleed. *Id.* at ¶ 46. Following this incident, a coach entered the room, saw the student's bloody nose, but said and did nothing with respect to the offending student. *Id.* at ¶ 48. In response to this incident, J.B. returned home crying and stated an intention to not return to school. *Id.* at ¶ 49. J.B.'s mother pulled him from in-person learning during the 2019-2020 school year due to J.B.'s fear of retaliation should he return to the District. *Id.* at ¶¶ 50; 53. Despite attempts to secure appropriate assistance from the District for J.B., Ms. J.B. was ultimately forced to enroll her son in a neighboring public school district for the 2020-2021 school year, and as a result, Ms. J.B. is required to pay tuition each year to enable him to attend. *Id.* at ¶¶ 54-55. Plaintiffs aver that J.B. has suffered and continues to suffer from substantial harm as a result of the incidents and conduct described herein. *Id.* at ¶¶ 50-52.

Plaintiff filed the Complaint on August 16, 2021. Plaintiffs set forth the following claims in the Complaint: (1): Count I – "Fourteenth Amendment State-Created Danger" pursuant to 42 U.S.C. § 1983; (2) Count II – "Violation of Fourteenth Amendment Liberty Interest" pursuant to 42 U.S.C. § 1983; (3) Count III – Negligence Per Se; (4) Count IV – Negligence; and (5) Count V

– Intentional Infliction of Emotional Distress.[1]  The District filed its Motion to Dismiss, along with a Brief in Support (ECF No. 14), on August 26, 2021.  Thereafter, this Court temporarily consolidated this case with a related matter at 2:21-cv-1088, ECF No. 19, and later vacated the Orders consolidating the cases following communications from counsel in both matters, ECF No. 30.  On September 16, 2021, Plaintiffs' previous counsel moved to withdraw from this case and further sought an extension on behalf of Plaintiffs to respond to the Motion to Dismiss.  Following several further extensions, replacement counsel entered an appearance in this matter on May 31, 2022.  Plaintiffs filed a Brief in Opposition (ECF No. 49) on June 15, 2022.  The District filed a Reply (ECF No. 50) on June 21, 2022.

## II.     Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

---

[1] Following review of the District's Motion, Plaintiffs have elected to voluntarily withdraw Counts III, IV, and V of their Amended Complaint without prejudice.  Br. in Opp'n 8, ECF No. 49.  Accordingly, the only remaining claims set forth in the Complaint that are still at issue are Counts I and II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of

6

the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *see also Grayson*, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

### III. Discussion

"Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). While individuals have "a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment[,] . . . the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." *Phillips*, 515 F.3d at 235 (citations omitted); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[The Due Process Clause's] purpose was to protect the people from the State, not to ensure that the State protected them from each other."). An exception to this general rule is the state-created danger theory, under which the Third Circuit has explained that "the Due Process Clause can impose an affirmative duty to protect if the state's own actions create

7

the very danger that causes the plaintiff's injury." *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013).[2]

To establish a meritorious state-created danger claim, a plaintiff must prove the following essential elements:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (citations omitted) (footnotes omitted) (internal quotation marks omitted).

The District argues that Plaintiffs fail to allege facts sufficient to satisfy the first, third, and fourth elements of a state-created danger claim, and that Count I of the Complaint should be dismissed. Plaintiffs have advanced argument that they have set forth sufficient facts to state a plausible Section 1983 state-created danger claim. The Court begins with the fourth element, as it is the most commonly disputed issue in cases such as this, and the Court has discussed the same in its Memorandum Opinion in 2:21-cv-1088 issued contemporaneously with this Memorandum Opinion.

---

[2] Another exception to this general rule is the "special relationship" exception, which is not applicable in this context. *See Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 731 (D.N.J. 2015) ("In general, the Court of Appeals has held that the authority that schools have over students during the school day does not create the 'special relationship' necessary for a student to assert a viable due process claim under § 1983." (citing *Morrow*, 719 F.3d at 170)). Plaintiffs have not set forth any argument indicating reliance on the special relationship exception, and have titled their claim a "state-created danger" claim. Given the special relationship exception's general inapplicability in the context of schools and students, and given Plaintiffs' apparent reliance on only the state-created danger exception, the Court's analysis focuses on the latter.

The Third Circuit has emphasized that, "under the fourth element of a state-created danger claim, '[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger.'" *Bright*, 443 F.3d at 282 (quoting *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir.1992)); see also D.R., 972 F.2d at 1373 ("Post-*DeShaney* courts have tracked the quoted Supreme Court's language by asking whether the state actors involved affirmatively acted to *create* plaintiff's danger, or to render him or her more *vulnerable* to it."); *L.R. v. Sch. Dist. of Philadelphia*, 60 F. Supp. 3d 584, 594 (E.D. Pa. 2014), *aff'd*, 836 F.3d 235 (3d Cir. 2016) ("It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." (quoting *Bright*, 443 F.3d at 282)). While "the line between action and inaction may not always be clear[,]" the Third Circuit has explained that it has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised in some fashion." *Phillips*, 515 F.3d at 235–36; *see also Morrow*, 719 F.3d 177-78 (explaining that, while "the line between action and inaction is not always easily drawn[,]" a plaintiff must do more than simply attempt to "redefine clearly passive inaction as affirmative acts[.]"); *Middle Bucks*, 972 F.2d at 1374 ("We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is. If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." (quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982)).

In opposing the District's Motion, Plaintiffs aver that the District's "lack of supervision, failure to supervise, and failure to protect Plaintiff J.B. are sufficient to establish a prima facie case under the state created danger theory." Br. in Opp'n 3, ECF No. 49. Plaintiffs further aver that

9

"J.B. was an enrolled student and under Defendant's care during school hours and during after school activities[,]" and that "[h]is compulsory attendance in school and his participation in school activities placed him in more danger than if he were truant." *Id.* at 5. The Court notes that district courts and the Third Circuit have consistently rejected assertions that materially similar allegations constitute affirmative acts by a state actor. Courts in the Third Circuit routinely find that such allegations of the provision of a high school setting where an assault occurs and the failure to supervise more closely constitute passive inaction as opposed to affirmative acts. *See Pagan v. City of Philadelphia*, No. CIV.A. 11-5178, 2012 WL 1965386, at *6 (E.D. Pa. May 31, 2012) ("These allegations, which fault Defendants for leaving Pagan and other students 'unsupervised and unprotected,' reveal it is not Defendants' affirmative conduct in holding a fire drill—as they were required to do under state law—but their failure to provide adequate security in the stairwell that is alleged to have increased the risk of harm to Pagan."); *see also id.* ("These cases thus refute the suggestion that simply placing a student in a school officials know to be dangerous constitutes the affirmative act necessary to support such claims."); *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1376 (3d Cir. 1992) ("We readily acknowledge the apparent indefensible passivity of at least some school defendants under the circumstances. Accepting the allegations as true, viz., that one school defendant was advised of the misconduct and apparently did not investigate, they show nonfeasance but they do not rise to the level of a constitutional violation."); *Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 732 (D.N.J. 2015) ("But providing a high school setting in which an assault occurs without specific warning does not amount to the school Defendants creating the opportunity for criminal conduct victimizing Plaintiff that could not otherwise have occurred.").

Plaintiffs' allegations of his mandatory attendance at school and a failure to provide supervision prior to wrestling practice clearly cannot support a Section 1983 claim for state-created danger.[3] In their Brief, Plaintiffs also point to the actions and inactions of the District's coaches in arguing that they have stated a Section 1983 claim. *See* Br. in Opp'n 5, ECF No. 49 ("Moreover, as outlined in Plaintiffs' Amended Complaint, Defendant's wrestling coaches were aware of hazing and bullying occurring between wrestlers, but elected not to properly intervene. Electing to proceed in this way was an affirmative act by Defendant's coaches, and was the direct cause of J.B.'s vulnerability as alleged in Plaintiffs' Amended Complaint."). Again, a failure to supervise or intervene, while problematic, is not sufficient to allege affirmative acts on the part of a state actor.

Further, and importantly, in this case, Plaintiffs have sued only the District and have thus only asserted a Section 1983 claim against the District. Because Plaintiffs assert this claim against the District, an "additional wrinkle" is implicated because a school district generally cannot be held vicariously liable for the unconstitutional actions of its employees:

> The Third Circuit has held that a municipality may be "independently liable for a substantive due process violation even when none of its individual employees is liable." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir.2006) (citing *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir.2003)). However, it is well established that a School District, like a municipality, "cannot be liable solely as an employer because there is no respondeat superior theory of municipal liability in § 1983 actions." *Brown*, 318 F.3d at 482. Instead, claims of this nature may only survive dismissal "when the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

---

[3] To the extent that Plaintiffs attempt to assert that J.B. also observed bullying after providing a statement to District personnel and/or police during the investigation that followed the District's discovery of the hazing incidents, Plaintiffs fail to offer any causal connection between that specific questioning and subsequent bullying, i.e. an alleged affirmative act and harm. Rather, Plaintiffs allege that such bullying by football team members of wrestling team members other than J.B. occurred in retaliation for the hazing incidents themselves. Plaintiffs allege that football student team members subsequently sent death threats to J.B. and other wrestling team members, and further physically assaulted certain displaced wrestlers *in retaliation for the above-described hazing incidents*. Compl. ¶¶ 43-45, ECF No. 12.

injury.'" *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir.2007) (quoting [*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 704 (1978)]).

*Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 239–40 (W.D. Pa. 2015) (footnote omitted); *see also Patrick v. Great Valley Sch. Dist.*, 296 F. App'x 258, 262 (3d Cir. 2008) ("Municipal employers are not vicariously liable for all constitutional violations that their employees commit. Under *Monell* and its progeny, municipal liability will attach only where a plaintiff establishes that an official policy or custom served as a proximate cause of the asserted constitutional deprivation." (citations omitted)).[4][5]

> The United States District Court for the Eastern District of Pennsylvania has explained:
>
> "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *4, 2008 U.S. Dist. LEXIS 50522 at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690, 98 S.Ct. 2018). A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice. *Monell*, 436 U.S. at 690, 98 S.Ct. 2018. A "custom may be established by proving knowledge of, and acquiescence to, a practice." *Watson*, 478 F.3d at 156. "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).
>
> Failing to train municipal employees can also be a source of liability, but "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." [*City of Canton v. Harris*, 489 U.S. 378, 385 (1989)]. *See also Kneipp*, 95 F.3d at 1212. A three-part test has been formulated to determine whether a municipality's

---

[4] The Court notes that this issue is, somewhat surprisingly, not addressed in the briefing submitted by the parties. Because the Court believes this issue to be dispositive, and because the Court will permit leave to amend and expects potential additional motion practice and briefing should an amended complaint be filed, the Court anticipates that the parties will be prepared to squarely address this issue moving forward, if necessary.

[5] *See also Keener v. Hribal*, 351 F. Supp. 3d 956, 976 n.10 (W.D. Pa. 2018) ("Courts applying the state created danger theory often lump municipalities and individual state actors together when performing the analysis. *See Sciotto v. Marple Newton Sch. Dist.*, 81 F.Supp.2d 559, 573 (E.D. Pa. 1999). This approach has caused confusion. *See, e.g., Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F.Supp.2d 633, 639 (E.D. Pa. 2011) (discussing the distinction between municipal liability and state-created danger claims and acknowledging that the state-created danger theory by itself is not enough to implicate municipal liability.").

12

> failure to train or supervise amounts to deliberate indifference. *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "[I]t must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

*Lesher v. Zimmerman*, No. 5:17-CV-04731, 2018 WL 2239560, at *8 (E.D. Pa. May 16, 2018).

Even if Plaintiffs had alleged facts that can establish a violation of J.B.'s Fourteenth Amendment rights in this matter with respect to the actions of the coaches, Plaintiffs fail to sufficiently allege facts supporting a finding that the District could be found liable for the same. As currently pled and argued, Plaintiffs' Section 1983 claim seems to rely on an assertion that the District is vicariously liable for the actions of the wrestling coaches, and the same is impermissible in the context of a Section 1983 claim against a school district. With respect to Plaintiffs' allegations as to the coaches' failure to supervise and/or protect, Plaintiffs advance no assertion that the District maintained a formal policy that instructed coaches to allow hazing to take place. Plaintiffs further fail to plausibly allege that any final policy-making official at the District knew of and acquiesced to a well-settled practice of permitting hazing. Accordingly, Plaintiffs fail to allege that a District official enacted or entertained a policy or custom of permitting hazing at the District.

While Plaintiffs allege that the District failed to sufficiently train its wrestling coaches, they does so in generic, boilerplate fashion. *See* Compl. ¶ 76, ECF No. 12 ("The District used its authority to create the opportunity for harm that otherwise would not have existed by failing to supervise its students, by failing to hire and maintain wrestling coaches who would act appropriately and in the best interest of its students, by failing to train its wrestling coaches on the importance of appropriate supervision, by failing to train its wrestling coaches on appropriate child abuse reporting obligations, and by subsequently failing to ensure J.B.'s safety after the District

13

conducted its hazing investigation.").[6]  "To state a claim, Plaintiffs must show that Defendants' failure to train or supervise employees amounted to '"deliberate indifference" to the rights of persons with whom those employees will come into contact.'"  *Lockhart*, 170 F. Supp. 3d at 733 (*Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).  To plausibly state a claim, a plaintiff must do more than generically allege a failure to train an employee to prevent a harm that has occurred.  *See id.* ("But nowhere in the Complaint or Amended Complaint do Plaintiffs even mention what policies or practices Defendants had with respect to teacher training, sexual assault training and prevention, and supervision.  Without any facts showing what specific training or supervision was in place or what should have been provided, Plaintiffs cannot support a claim that the training provided was inadequate.").; *see also id.* ("a § 1983 claim for failure to train requires some allegations from which the court can infer that the defendant failed to offer some specific training that would have prevented the deprivation of plaintiff's constitutional rights.").  Plaintiffs' Section 1983 claim is deficient for this reason.

The court further finds that Plaintiffs have not alleged, at this juncture, facts sufficient to support a finding that any failure to train amounted to deliberate indifference.  With respect to deliberate indifference, the *Lockhart* court explained:

> Ordinarily, deliberate indifference for purposes of failure to train is demonstrated by a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 131 U.S. 51, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011).  In certain situations, however, the need for training may be "'so obvious' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights," even without a pattern of constitutional violations. *Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. 1197; *Connick*, 131 S.Ct. at 1361 (noting that a single incident may trigger municipal liability where unconstitutional consequences for failure to train are "patently obvious").  In other words, Plaintiffs must show that Defendants were "on notice that, absent additional specified training, it was 'highly predictable'" that employees would make decisions that would violate

---

[6] The Court notes again that Plaintiff's allegations tend to indicate a failure to act, as opposed to an affirmative act, on the District's part.  *See* Compl. ¶ 77, ECF No. 12 ("The District's actions were predicated on a failure to act in light of a known risk.").

constitutional rights.  *Connick*, 131 S.Ct. at 1365.  Plaintiff has not stated a claim
             under either a pattern-of-violation theory or a single-violation theory.

*Lockhart*, 170 F. Supp. 3d at 734-35; *see also Cuvo v. Pocono Mountain Sch. Dist.*, No. 3:18-CV-01210, 2019 WL 1424524, at *7 (M.D. Pa. Mar. 29, 2019) (rejecting conclusory assertions of a failure to train, and explaining that the plaintiffs "failed to allege any facts from which a factfinder might infer actual or constructive knowledge by the school district's board of directors of a previous pattern at similar constitutional violations, or of the allegedly inadequate training, which is a prerequisite to a finding of deliberate indifference by a municipality[,"] and further that "policies are not deficient simply because they are not the best."). Plaintiffs fail to allege facts to support a finding that any failure to train was accompanied by deliberate indifference.

In light of the above, the Court finds that Plaintiffs fail to state a Section 1983 state-created danger claim against the District, and, because the Court will permit leave to amend in this civil rights case, need not address the remaining elements of a state-created danger claim. The Court cannot conclude with certainty that amendment would be futile, though it notes that Plaintiffs have already filed one amended complaint and have not come particularly close to stating a claim for state-created danger against the District at this time. The Court does not anticipate permitting further leave to amend should Plaintiffs again fail to state such a claim if they choose to file an amended complaint consistent with this Court's accompanying Order.

Turning to Ms. J.B.'s Section 1983 claim at Count II for a violation of her Fourteenth Amendment liberty interest, Plaintiffs allege that Ms. J.B. was deprived of (1) her interest in the care, custody, and control of her child; (2) her interest in preserving the life and physical safety of her child; (3) her interest in the parenthood and companionship of her child; and (4) her right to make parental decisions in the best interest of her child. Compl. ¶¶ 82-86, ECF No. 12. Plaintiffs allege that the District deprived her of these liberty interests by "failing to adequately support

15

J.B.[,] result[ing] in him being victimized by school District staff and other students [,]" and further by subjecting J.B. to "intense questioning . . . during [the District's] investigation of the hazing incidents without contacting or consulting Ms. J.B." *Id.* at ¶¶ 85; 87, ECF No. 12.  Plaintiffs aver that, as a result of these deprivations of her liberty interests, Ms. J.B. has suffered damage, trauma, and distress.  *Id.* at ¶ 88.

"To state a due process claim under § 1983[,]" a plaintiff "must identify a 'recognized "liberty or property" interest within the purview of the Fourteenth Amendment, and [show] that [they were] intentionally or recklessly deprived of that interest, even temporarily, under color of state law.'"  *Anspach ex rel. Anspach v. City of Philadelphia, Dep't of Pub. Health*, 503 F.3d 256, 262 (3d Cir. 2007) (quoting *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990)).  "[T]he interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

In describing the District's purported interference with Ms. J.B.'s liberty interests, Plaintiffs provide as follows:

> Here, the Defendant's actions did interfere with Ms. J.B.'s ability to make decisions regarding J.B,'s upbringing. Defendant's lack of supervision and disregard of hazing and bullying subjected J.B. to violence that Ms. J.B. would not have permitted.  Furthermore, the Defendant's questioning and police interrogation of J.B. without notifying Ms. J.B. prevented her from considering whether it was in J.B.'s best interest - mentally, emotionally, and socially – to withstand an interrogation.

Br. in Opp'n 8, ECF No. 49.  While the Court understands Ms. J.B.'s disappointment that J.B. allegedly witnessed acts of hazing, the Court finds that Plaintiffs' first assertion of interference is far too broad to state a plausible claim for an interference with Ms. J.B.'s interest in the care, custody and control of her child.  While it is entirely understandable that any parent would like to

shield their children from witnessing violence, Ms. J.B.'s broad assertion that her liberty interest was violated because she would not have permitted her son to witness acts of violence would require this Court to hold that any parent could state a Section 1983 claim when their child witnesses anything that the parent finds to be unacceptable. "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S. at 195. The Court has already found that J.B. has not stated a Section 1983 claim for a violation of his Fourteenth Amendment rights. It likewise finds that Ms. J.B. cannot support a claim for a violation of her liberty interest where she alleges that the District's failure to supervise led to J.B. witnessing acts of bullying and hazing, even though Ms. J.B. would not have permitted or preferred J.B. to witness such acts.

With respect to Plaintiffs' assertions respecting the District's questioning and the police's "interrogation" of J.B. about his observations of hazing incidents without notification to Ms. J.B., the Court notes that Plaintiffs cite to no authority supporting their assertion that a school's act of interviewing a non-suspect student during an investigation of hazing conduct without first notifying the parent interferes with a parent's rights to make parental choices that are in the best interest of their child. "The Supreme Court has never been called upon to define the precise boundaries of a parent's right to control a child's upbringing and education. It is clear, however, that the right is neither absolute nor unqualified." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 182 (3d Cir. 2005). The Third Circuit has explained that "[c]ourts have held that in certain circumstances the parental right to control the upbringing of a child must give way to a school's ability to control curriculum and the school environment." *C.N.*, 430 F.3d at 182.

In discussing searches performed by school officials in a school setting, the Supreme Court has explained that, when balancing a student's expectations of privacy and the school's need to

maintain an environment in which learning can take place, "[i]t is evident that the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985). Courts interpreting this holding in the context of interviews of students conducted by school officials in the course of an investigation routinely find that allegations similar to those at issue in this case do not violate the student's constitutional rights. *See K.A. ex rel. J.A. v. Abington Heights Sch. Dist.*, 28 F. Supp. 3d 356, 375 (M.D. Pa. 2014) (holding that, where a student was "detained" and "interrogated" for a period of seven hours about suspected drug dealing activities and his parents were not contacted in violation of school policy, that: "in light of the government's interest in maintaining order and discipline in the school, together with the compelling need to prevent children from being exposed to unlawful drug use by their parents, and to protect other school children, it is abundantly clear that any claim that Defendants violated J.A.'s right to family integrity and liberty, or that the defendants' failure to obtain parental consent before J.A. was questioned by school officials violated his rights, must be dismissed. Plaintiff has failed to provide sufficient plausible allegations that the school officials' actions sufficiently 'shock the conscience' to support a substantive due process claim under the Fourteenth Amendment."); *id.* ("It would be irrational to assert that when a school official suspects a student of possessing, using, or distributing drugs, alcohol, or contraband, that official must always immediately contact a child's parent or guardian prior to speaking with the child and first ascertaining the surrounding factual situation."); *Picarella v. Terrizzi*, 893 F. Supp. 1292, 1301 (M.D. Pa. 1995) (where student interviewed away from other students about potential child abuse, holding that: "The amended complaint adds that Elizabeth Picarella was reduced to tears by the questioning, that the questioning did not stop when she asked, and she was not permitted to see her brother when she asked. We do not see how these circumstances make the

questioning unreasonable, in light of the state interest in uncovering child abuse."); *In re D.E.M.*, 727 A.2d 570, 577 (Pa. Super. 1999) ("Balancing D.E.M.'s limited right to control his person while in school, with the need of the school to maintain order and a proper educational environment, we conclude that the mere detention and questioning of D.E.M. by school officials was reasonable. . . . To require teachers and school officials to have reasonable suspicion before merely questioning a student would destroy the informality of the student teacher relationship, which the United States Supreme Court has respected and preserved.").

Schools have an interest in preventing hazing and bullying. *See J.S. by M.S. v. Manheim Twp. Sch. Dist.*, 263 A.3d 295, 320 (Pa. 2021) ("[the school district] certainly has an interest in preventing bullying or targeting of a fellow student . . . ."). Further, Plaintiffs' allegations respecting the District's interview of J.B. about his observation of hazing incidents or his subsequent statement to police are threadbare and fail to shed any light on the nature of this questioning, and Plaintiffs cite to no case law that supports their position. As pled, the District seemingly conducted an interview of J.B. that was not in violation of J.B.'s constitutional rights during the course of an investigation into the very serious hazing incidents discussed herein, i.e. in the interest of controlling the school environment and preventing hazing and bullying. On this record, the Court can only conclude that Ms. J.B. fails to state a claim for any interference with her parenting liberty interests in violation of the Fourteenth Amendment related to the District's interview of J.B.

For the reasons discussed above, the Court finds that amendment as to this claim would be futile. Plaintiffs have already filed an amended complaint in this matter, and Plaintiffs' current allegations in support of this claim, as well as their very limited legal argument in support of Count II, come well short of providing this Court with a basis to find that Plaintiffs can state a claim

under Section 1983 on behalf of Ms. J.B. Accordingly, the Court will dismiss Count II of the Complaint with prejudice.

## IV. Conclusion

For the reasons discussed above, the Court will grant Defendant's Motion to Dismiss. An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 29, 2022

cc: All counsel of record