THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.B., a minor, by and through his parent and natural guardian, Ms. J.B., | )<br>)<br>) |
| Plaintiffs, | )   2:21-cv-00690-RJC<br>) |
| vs. | )<br>) |
| GREATER LATROBE SCHOOL DISTRICT, | )<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

      Before the Court is the Motion to Dismiss (ECF No. 57) filed by Defendant Greater Latrobe School District ("Defendant" or the "District"). In this action, Plaintiff, J.B. ("J.B." or "Plaintiff"), a minor, by and through his parent and natural guardian, Ms. J.B., asserts a claim against the District arising out of J.B.'s observation of hazing incidents while he was a student athlete on the District's junior varsity wrestling team and his subsequent questioning regarding these incidents by District personnel and police. The District has moved to dismiss each of the four claims set forth against it in Plaintiff's operative Second Amended Complaint ("Complaint") (ECF No. 54) pursuant to Rule 12(b)(6). Mot. ¶ 2, ECF No. 57. Alternatively, the District requests dismissal of any request for punitive damages in the Complaint and any request for attorney's fees as part of Counts II, III, and IV. *Id.* at ¶ 5. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. The Motion to Dismiss has been fully briefed and is ripe for disposition.

1

I.      **Factual Background & Procedural History**

In the Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motion at issue:[1]

J.B. was identified in 2010 as a student with a disability with a speech or language impairment. Compl. ¶ 23, ECF No. 54. J.B.'s natural father passed away in 2013. *Id.* at ¶ 24. The District was aware of both of these facts. *Id.* at ¶¶ 26; 114. J.B. was a 9th grade student in the District's junior high school during the 2019-2020 school year, and was also a student athlete on the District's wrestling team. *Id.* at ¶¶ 2-3. During his time on the wrestling team, J.B. observed incidents of severe hazing. *Id.* at ¶ 3.

The District was aware that junior high school students, and presumably those on the wrestling team, were regularly left unsupervised, and was further aware of inappropriate behavior, and specifically hazing concerns, between students and coaches on the wrestling team. Compl. ¶¶ 4-5; 31-32, ECF No. 54. "J.B. witnessed the well-known incidents in January 2020 that gave rise to criminal charges against two Greater Latrobe Junior High School wrestling coaches and four students for a hazing incident of a sexual nature that was caught on camera." *Id.* at ¶ 34. More specifically, members of the District's wrestling team used a wooden stick, which those members referred to as a "rape stick," to sexually and physically assault other team members before practices at the school in January 2020. *Id.* at ¶ 35. "Over the course of at least one week, older wrestling team members physically restrained younger teammates, using the wooden stick to poke other teammates through their shorts and penetrated their buttocks." *Id*. Video from the District's surveillance cameras shows junior varsity wrestling coach David Galando witnessing such abuse,

---

[1] The Court notes that many of the allegations raised in the Second Amended Complaint were previously raised in Plaintiff's Amended Complaint. The Court thus borrows heavily from its previous description of the factual background of this matter set forth in its Memorandum Opinion at ECF No. 52, and supplements that description where appropriate.

2

and on one occasion confiscating the wooden stick. *Id.* at ¶ 36. Upon confiscating the wooden stick, Galando told the older team members to knock off the "weird behavior." *Id.* at ¶ 37. Galando did not dispose of the wooden stick at that time, as it appears in another surveillance video and was confiscated again by Galando several days later. *Id.* at ¶ 36.

On a separate occasion, Galando witnessed members of the wrestling team utilizing a volleyball net to tie up a teammate and further penetrating him in the buttocks with the wooden stick while he was immobilized. Compl. ¶ 38, ECF No. 54. Surveillance video shows that Galando chose not to intervene on two separate occasions during that assault, specifically by looking into the gym during the assault and taking no action and by further observing the netting after the victim had broken free and taking no action outside of vaguely questioning team members. *Id.* at ¶ 38-40. Galando was aware of and encouraged the inappropriate assaults and other behaviors in order to carry out a long-standing "tradition" of hazing. *Id.* at ¶ 37.

On the dates of the assaults, and on every practice day prior to the last assault, the wrestlers were left completely unsupervised from 2:45 p.m. when school ended until 3:30 p.m. when practice commenced. Compl. ¶ 30, ECF No. 54. "It was well known by school administration, teachers, staff, and coaches that while minor children were in Defendant's care and supervision for school sponsored activities, these minor children were often left without supervision." *Id.* at ¶ 29. The District "either knowingly allowed, or was negligently aware, that these wrestlers were being left unsupervised." *Id.* at ¶ 31. The District did not have an anti-hazing policy in place, or if it did, it failed to educate students and/or staff on that policy. *Id.* at ¶ 33. The District further failed to enforce any anti-hazing policy that was in place and failed to properly train the wrestling coaches, and Galando in particular, on identifying and eliminating sports-related hazing. *Id.*

In August 2021, several wrestlers testified at a public hearing that the District's coaches were made aware of the sexual assaults, but that Galando failed to intervene, simply characterizing the behavior as "weird." *Id.* at ¶ 41. The District's administration was also aware of the sexual assaults and hazing incidents, but did not take any affirmative steps to investigate those incidents that were reported prior to the last incident in January of 2020. *Id.* at ¶ 42. The District's failure to supervise the junior varsity wrestlers and its failure to report the assaults to the Title IX Coordinator created a "climate of fear and intimidation" and a "team culture of fear from coaches who should be their mentors, older students who should be their leaders, and administrators who should be protecting them from dangers created by their own policies, or lack thereof." *Id.* at ¶ 43.

During the course of a school and police investigation into the January 2020 incident, J.B. gave a statement against players and school personnel. Compl. ¶ 44, ECF No. 54. While J.B. was under the impression that numerous wrestling team members had provided statements regarding the incidents, J.B. later discovered that he was the only student who provided statements against players and District personnel on the date in question. *Id*. Ms. J.B. asked for J.B.'s statement to be retracted, but the police refused. *Id.* at ¶ 45. The District failed to maintain the confidentiality of students, such as J.B., who cooperated in the investigation of the hazing incidents, which in turn made J.B. vulnerable to bullying and harassment by the offending wrestlers. *Id.* at ¶ 75. The District subsequently failed to ensure J.B.'s safety while he engaged in District-sponsored activities and participated in his normal school day. *Id.* at ¶ 76.

The wrestling season was canceled in January of 2020, and, following this cancelation, the District's football coaches contacted members of the wrestling team to provide them with an opportunity to work out with the football team. Compl. ¶ 47, ECF No. 54. The student football

team members subsequently sent death threats to J.B. and other wrestling team members, and further physically assaulted certain displaced wrestlers in retaliation for the above-described hazing incidents. *Id.* at ¶¶ 47-48. Many students bullied and taunted the displaced wrestlers, including J.B., by attempting to take lunches and filling shoes with water and throwing the shoes at other students. *Id.* at ¶ 49. The students were unsupervised at the time of these incidents. *Id.* at ¶ 51. On one occasion, a student was hit in the face by a water-filled shoe, causing that student's nose to bleed. *Id.* at ¶ 50. Following this incident, a coach entered the room, saw the student's bloody nose, but said and did nothing with respect to the offending student. *Id.* at ¶ 52. In response to this incident, J.B. returned home crying and stated an intention to not return to school. *Id.* at ¶ 53.

J.B.'s mother pulled him from in-person learning during the 2019-2020 school year due to J.B.'s fear of retaliation should he return to the District. Compl. ¶¶ 53-54, ECF No. 54. Despite attempts to secure appropriate assistance from the District for J.B., Ms. J.B. was ultimately forced to enroll her son in a neighboring public school district for the 2020-2021 school year, and as a result, Ms. J.B. is required to pay tuition each year to enable him to attend. *Id.* at ¶¶ 59-60. J.B. has suffered and continues to suffer from substantial harm as a result of the incidents and conduct described herein. *Id.* at ¶¶ 55-56; 116.

The Court granted the District's previous motion to dismiss, which sought dismissal of the claims set forth in a previous complaint filed by Plaintiff and his mother. The Court dismissed J.B.'s claim without prejudice, and dismissed Ms. J. B.'s claim with prejudice. J.B. filed the Complaint on September 19, 2022, asserting the following claims: (1): Count I – Fourteenth Amendment State-Created Danger pursuant to 42 U.S.C. § 1983; (2) Count II – Negligence Per

Se; (3) Count III – Negligence; and (4) Count IV – Intentional Infliction of Emotional Distress.[2] The District filed its Motion to Dismiss, along with a Brief in Support (ECF No. 58), on October 3, 2022. J.B. filed a Brief in Opposition (ECF No. 59) on October 24, 2022. The District filed a Reply (ECF No. 60) on October 31, 2022.

## II. Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

---

[2] Following review of the District's Motion, Plaintiff has elected to voluntarily withdraw Counts II, III, and IV of the Complaint without prejudice. Br. in Opp'n 6, ECF No. 59. Accordingly, the only remaining claim set forth in the Complaint at this time is Count I.

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless it would

7

be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *see also Grayson*, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

### III.  Discussion

"Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). While individuals have "a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment[,] . . . the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." *Phillips*, 515 F.3d at 235 (citations omitted); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[The Due Process Clause's] purpose was to protect the people from the State, not to ensure that the State protected them from each other."). An exception to this general rule is the state-created danger theory, under which the Third Circuit has explained that "the Due Process Clause can impose an affirmative duty to protect if the state's own actions create the very danger that causes the plaintiff's injury." *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013).[3]

---

[3] Another exception to this general rule is the "special relationship" exception, which is not applicable in this context. *See Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 731 (D.N.J. 2015) ("In general, the Court of Appeals has held that the authority that schools have over students during the school day does not create the 'special relationship' necessary for a student to assert a viable due process claim under § 1983." (citing *Morrow*, 719 F.3d at 170)). Plaintiff has not set forth any argument indicating reliance on the special relationship exception, and has titled his claim a "state-created danger" claim. Given the special relationship exception's general inapplicability in the context of schools and students, and given Plaintiff's apparent reliance on only the state-created danger exception, the Court's analysis focuses on the latter.

To establish a meritorious state-created danger claim, a plaintiff must prove the following essential elements:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (citations omitted) (footnotes omitted) (internal quotation marks omitted).

The District argues that Plaintiff fails to allege facts sufficient to satisfy the first and fourth elements of a state-created danger claim, and that Count I of the Complaint should be dismissed with prejudice. The District further argues that Plaintiff fails to allege that J.B. suffered a cognizable harm under a state-created danger theory. Plaintiff has advanced argument that he has set forth sufficient facts to state a plausible Section 1983 state-created danger claim, specifically arguing that "Defendant's lack of supervision, failure to supervise, and failure to protect Plaintiff J.B. are sufficient to establish a prima facie case under the state created danger theory." Br. in Opp'n 3, ECF No. 59.

The Third Circuit has emphasized that, "under the fourth element of a state-created danger claim, '[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger.'" *Bright*, 443 F.3d at 282 (quoting *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir.1992)); *see also Middle Bucks*, 972 F.2d at 1373 ("Post-*DeShaney* courts have tracked the quoted Supreme Court's language by asking whether the state actors involved affirmatively acted to *create* plaintiff's danger, or to render him or her more *vulnerable* to it."); *L.R. v. Sch. Dist. of*

9

*Philadelphia*, 60 F. Supp. 3d 584, 594 (E.D. Pa. 2014), *aff'd*, 836 F.3d 235 (3d Cir. 2016) ("It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." (quoting *Bright*, 443 F.3d at 282)).  While "the line between action and inaction may not always be clear[,]" the Third Circuit has explained that it has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised in some fashion."  *Phillips*, 515 F.3d at 235–36; *see also Morrow*, 719 F.3d 177-78 (explaining that, while "the line between action and inaction is not always easily drawn[,]" a plaintiff must do more than simply attempt to "redefine clearly passive inaction as affirmative acts[.]"); *Middle Bucks*, 972 F.2d at 1374 ("We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is.  If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." (quoting *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982)).

In many respects, if not all, Plaintiff has mounted identical arguments in opposing the District's current Motion to Dismiss to those he advanced in opposing the previous motion to dismiss.  As noted, Plaintiff again asserts that the District's "lack of supervision, failure to supervise, and failure to protect Plaintiff J.B. are sufficient to establish a prima facie case under the state created danger theory."  Br. in Opp'n 3, ECF No. 59.  Plaintiff also again avers that "J.B. was an enrolled student and under Defendant's care during school hours and during after school activities[,]" and that "[h]is compulsory attendance in school and his participation in school activities placed him in more danger than if he were truant."  *Id.* at 5.  As it did in its prior Memorandum Opinion, the Court notes that district courts and the Third Circuit have consistently rejected assertions that materially similar allegations constitute affirmative acts by a state actor.

10

Courts in the Third Circuit routinely find that such allegations of the provision of a high school setting where an assault occurs without warning and the failure to supervise more closely constitute passive inaction as opposed to affirmative acts. *See Pagan v. City of Philadelphia*, No. CIV.A. 11-5178, 2012 WL 1965386, at *6 (E.D. Pa. May 31, 2012) ("These allegations, which fault Defendants for leaving Pagan and other students 'unsupervised and unprotected,' reveal it is not Defendants' affirmative conduct in holding a fire drill—as they were required to do under state law—but their failure to provide adequate security in the stairwell that is alleged to have increased the risk of harm to Pagan."); *see also id.* ("These cases thus refute the suggestion that simply placing a student in a school officials know to be dangerous constitutes the affirmative act necessary to support such claims."); *Middle Bucks*, 972 F.2d at 1376 ("We readily acknowledge the apparent indefensible passivity of at least some school defendants under the circumstances. Accepting the allegations as true, viz., that one school defendant was advised of the misconduct and apparently did not investigate, they show nonfeasance but they do not rise to the level of a constitutional violation."); *Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 732 (D.N.J. 2015) ("But providing a high school setting in which an assault occurs without specific warning does not amount to the school Defendants creating the opportunity for criminal conduct victimizing Plaintiff that could not otherwise have occurred.").

The Court again holds that Plaintiff's allegations of his mandatory attendance at school and the District's failure to provide supervision prior to wrestling practice cannot support a Section 1983 claim for state-created danger.[4] In his Brief, Plaintiff also points to the actions and inactions

---

[4] Consistent with the Court's prior holdings, and Plaintiff having advanced no new argument on this topic, to the extent that Plaintiff attempts to assert that J.B. also observed bullying after providing a statement to District personnel and/or police during the investigation that followed the District's discovery of the hazing incidents, Plaintiff fails to offer any causal connection between that specific questioning and subsequent bullying, i.e. an alleged affirmative act and harm. Rather, Plaintiff alleges that such bullying of wrestling team members (other than J.B.) by football team

of the District's coaches in arguing that he has stated a Section 1983 claim. *See* Br. in Opp'n 5, ECF No. 59 ("Moreover, as outlined in Plaintiff's Second Amended Complaint, Defendant was aware of hazing and bullying occurring between wrestlers, the coaches' involvement, and elected not to properly intervene."). Again, a failure to intervene generally, while certainly problematic, is not sufficient to allege affirmative acts on the part of a state actor.

While Plaintiff alleges that the District failed to sufficiently train its wrestling coaches, he does so in generic, boilerplate fashion. *See* Compl. ¶ 81, ECF No. 54 ("Defendant used its authority to create the opportunity for harm that otherwise would not have existed by failing to supervise its students, by failing to hire and maintain wrestling coaches who would act appropriately and in the best interest of its students, to train its wrestling coaches on the importance of appropriate supervision, to train its wrestling coaches on appropriate child abuse reporting obligations, and by subsequently failing to ensure J.B.'s safety after Defendant conducted its hazing investigation without involvement from the appropriate school officials."). "To state a claim, Plaintiffs must show that Defendants' failure to train or supervise employees amounted to '"deliberate indifference" to the rights of persons with whom those employees will come into contact.'" *Lockhart*, 170 F. Supp. 3d at 733 (*Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)). To plausibly state a claim, a plaintiff must do more than generically allege a failure to train an employee to prevent a harm that has occurred. *See id.* ("But nowhere in the Complaint or Amended Complaint do Plaintiffs even mention what policies or practices Defendants had with respect to teacher training, sexual assault training and prevention, and supervision. Without any facts showing what specific training or supervision was in place or what

---

members occurred in retaliation for the hazing incidents themselves. Plaintiff alleges that football team members sent death threats to J.B. and other wrestling team members and further physically assaulted certain displaced wrestlers *in retaliation for the above-described hazing incidents*. Compl. ¶¶ 47-48, ECF No. 59.

should have been provided, Plaintiffs cannot support a claim that the training provided was inadequate.").; *see also id.* ("a § 1983 claim for failure to train requires some allegations from which the court can infer that the defendant failed to offer some specific training that would have prevented the deprivation of plaintiff's constitutional rights."). Plaintiff's Section 1983 claim is also deficient for this reason.

The court further finds that Plaintiff has not alleged, at this juncture, facts sufficient to support a finding that any failure to train amounted to deliberate indifference. With respect to deliberate indifference, the *Lockhart* court explained:

> Ordinarily, deliberate indifference for purposes of failure to train is demonstrated by a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 131 U.S. 51, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011). In certain situations, however, the need for training may be "'so obvious' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights," even without a pattern of constitutional violations. *Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. 1197; *Connick*, 131 S.Ct. at 1361 (noting that a single incident may trigger municipal liability where unconstitutional consequences for failure to train are "patently obvious"). In other words, Plaintiffs must show that Defendants were "on notice that, absent additional specified training, it was 'highly predictable'" that employees would make decisions that would violate constitutional rights. *Connick*, 131 S.Ct. at 1365. Plaintiff has not stated a claim under either a pattern-of-violation theory or a single-violation theory.

*Lockhart*, 170 F. Supp. 3d at 734-35; *see also Cuvo v. Pocono Mountain Sch. Dist.*, No. 3:18-CV-01210, 2019 WL 1424524, at *7 (M.D. Pa. Mar. 29, 2019) (rejecting conclusory assertions of a failure to train, and explaining that the plaintiffs "failed to allege any facts from which a factfinder might infer actual or constructive knowledge by the school district's board of directors of a previous pattern at similar constitutional violations, or of the allegedly inadequate training, which is a prerequisite to a finding of deliberate indifference by a municipality[,"] and further that "policies are not deficient simply because they are not the best."). Plaintiff fails to allege facts to support a finding that any failure to train was accompanied by deliberate indifference.

In light of the above, the Court finds that Plaintiff fails to state a Section 1983 state-created danger claim against the District. In dismissing Plaintiff's previous complaint, the Court noted that it did not anticipate permitting further leave to amend should Plaintiff again fail to state such a claim in an amended pleading. It bears noting that the amendments to Plaintiff's current complaint track allegations that this Court previously held were insufficient in a related case at 2:21-cv-1088, in that Plaintiff alleges that the scheduling of classes to end at 2:45 p.m. and the commencement of wresting practice at 3:30 p.m. created a timeframe wherein the District allowed student wrestlers to be completely unsupervised. In the related case, the Court explained:

> While Plaintiff takes issue with the scheduling of wrestling practice at a time when all students on the team could participate, but forty-five minutes after ninth-grade classes were scheduled to end, his Complaint as a whole as to scheduling makes clear that he takes issue with the District's inaction as opposed to affirmative conduct. *See* Compl. ¶ 57, ECF [N]o. 50 ("Defendant District's actions were predicated on a failure to act in light of a known risk . . . ."). As alleged, Plaintiff takes more issue with the fact that the school permitted ninth-grade students to use, and did not prevent them from using, the gymnasium without supervision before practice. Plaintiff does not allege that the District affirmatively required students to arrive at the gym at a time forty-five minutes before practice began. It is the District's failure to supervise, rather than the affirmative act of scheduling practice and classes, that is truly at issue with respect to Plaintiff's allegations surrounding scheduling. The same cannot support a Section 1983 claim under clear Third Circuit precedent. The Court finds that Plaintiff's allegations respecting the scheduling of wrestling practice are insufficient to support a Section 1983 claim.

2:21-cv-1088, ECF No. 79 at 12.

The Court cites to this paragraph from its prior opinion in the related case because Plaintiff was clearly on notice of the existence of that case, as the cases were once consolidated, and now relies on materially similar arguments and allegations that he should know have already been rejected by this Court. *See* Compl. ¶ 82, ECF No. 54 ("Defendant failed to act in light of a known risk"). Crucially, the plaintiff in the related case has now pled that the District required wrestlers to arrive at the gym at a time forty-five minutes before practice began. J.B.'s Complaint contains

14

no such allegation. Despite being warned that the Court was not likely to permit further amendment of the pleadings following the filing of a second amended complaint, Plaintiff filed a second amended complaint relying on allegations that this Court has already flatly rejected. This fact alone supports the conclusion that it would be inequitable to permit further amendment.

The Court also notes that it has, contemporaneously herewith, entered an opinion and order in the case at 2:21-cv-1088 denying a motion to dismiss filed by the District in that case. This might suggest, on the surface, that leave to amend could be appropriate in this matter because the plaintiff in the related case was able to plead affirmative conduct on the part of the District. Again, the Court believes that Plaintiff's failure to sufficiently allege affirmative conduct at this juncture and following the Court's signal that further leave to amend was unlikely to be granted alone would warrant dismissal with prejudice. While arguably unnecessary, because another issue supports dismissal with prejudice, the Court will, in an abundance of caution and for the sake of completeness, address that issue herein.

The District argues that Plaintiff fails to allege that J.B. suffered a cognizable harm under a state-created danger theory. While raised by the District in its prior motion to dismiss, this issue was not addressed in the Court's prior Memorandum Opinion because the Court dismissed Plaintiff's § 1983 without prejudice. That said, Plaintiff was on notice of this possible grounds for dismissal when he was given leave to amend. Despite this awareness, Plaintiff comes up short of alleging a cognizable injury, and the same warrants dismissal of his § 1983 claim with prejudice.

Emotional distress is not a cognizable harm for purposes of setting forth a state-created danger claim. *Carey v. City of Wilkes-Barre*, 410 F. App'x 479, 483 (3d Cir. 2011); *see also Holmes v. Geider*, No. CIV.A. 10-6831, 2011 WL 3497009, at *3 n.5 (E.D. Pa. Aug. 10, 2011) ("Because Holmes has not alleged any harm resulted from Defendants' actions, except for his

15

emotional distress, he also does not have a claim under the state-created danger theory."); *Wright v. Evans*, No. CIV.07-3725(JBS), 2009 WL 799946, at *10 (D.N.J. Mar. 24, 2009), *aff'd sub nom. Wright v. Drug Enf't Agency*, 354 F. App'x 608 (3d Cir. 2009) ("The defendants have argued that physical harm is required for a finding of 'state-created danger' under section 1983 and noted that Plaintiff has not pointed to any case that establishes mental anguish as a harm provided for under the doctrine. This Court agrees that a successful claim in the Third Circuit under [the] 'state-created danger' test will allege a harm to the plaintiff that was truly compelling or appalling enough to shock the conscience.").

While the Court in no way intends to diminish Plaintiff's alleged emotional and mental anguish, including an alleged diagnosis of Post Traumatic Stress Disorder, *see* Compl. ¶ 97, ECF No. 54, the Court is constrained to conclude that Plaintiff fails to sufficiently allege the type of injury that is cognizable in the context of a Section 1983 claim. Plaintiff's diagnosis of PTSD is not alone sufficient to establish physical injury. *See D.C. by & through A.T. v. Pittsburgh Pub. Sch.*, No. 2:19-CV-00012, 2020 WL 3195750, at *10 (W.D. Pa. June 15, 2020) (finding plaintiff failed to allege physical harm where plaintiff relied only on PTSD diagnosis). While Plaintiff very vaguely asserts that he has suffered physical manifestations of emotional duress, he does nothing to describe the nature of these manifestations. These vague, general, and conclusory assertions of "physical manifestations" are not sufficient to permit the Court to conclude that Plaintiff suffered physical harm. *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 430 (M.D. Pa. 2014) ("Here, the complaint alleges emotional distress, but does not allege physical manifestation of that distress. Although Plaintiffs allege M.S. suffered 'physical harm' as a result of the emotional distress, such a general, non-specific averment has been found insufficient to survive motions to dismiss."); *Kaufman v. Pennsylvania State Police*, No. CV 20-1383, 2021 WL

3930689, at *6 (W.D. Pa. Sept. 2, 2021) (dismissing claim where plaintiff failed to set forth allegations of *specific* physical manifestations of emotional distress); *Thompson v. United States*, No. CV 16-3287, 2017 WL 2972679, at *3 (E.D. Pa. July 12, 2017) ("Plaintiff fails to specifically identify even one physical manifestation of the emotional distress he alleges.").

Plaintiff was on notice of this asserted grounds for dismissal, was permitted an opportunity to amend after a previous motion to dismiss was granted, and was also warned that further leave to amend was unlikely. He still has come up short of setting forth sufficient allegations to support a cognizable harm under Section 1983, and the Court finds that further amendment would be futile. The Court will grant the Motion to Dismiss as to Count I, and will dismiss Count I with prejudice.

### IV. Conclusion

For the reasons discussed above, the Court will grant Defendant's Motion to Dismiss. An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 25, 2023

cc: All counsel of record